INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, LOCAL 564 *v.* BOROUGH OF JEWETT CITY
(15067)
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, LOCAL RI-152 *v.* BOROUGH OF JEWETT CITY
(15068)

PETERS, C. J., and CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued May 31—decision released July 4, 1995

*Beth Z. Margulies,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellant in both cases (intervening defendant).

*Douglas G. Adkins,* with whom was *Benjamin M. Wenograd,* for the appellees (plaintiff in each case).

PETERS, C. J. The Municipal Employees Relations Act (MERA), General Statutes § 7-467 et seq., imposes compulsory arbitration on a municipality and the representatives of its employees whenever the parties have reached an impasse in their collective bargaining.

The issue in these cases is whether the procedures statutorily prescribed for such compulsory arbitration govern stipulated arbitral awards arising out of the subsequent agreement of the parties on all disputed issues. We conclude that, when the parties expressly waive their rights under the compulsory arbitration statute, such stipulated awards are properly characterized as collective bargaining agreements, governed by General Statutes § 7-474,[1] rather than arbitration decisions governed by General Statutes § 7-473c.[2]

[1] General Statutes § 7-474 provides in relevant part: "NEGOTIATIONS AND AGREEMENTS BETWEEN MUNICIPALITY AND EMPLOYEE REPRESENTATIVES. FEDERAL APPROVAL. ELECTIVE BINDING ARBITRATION; PROCEDURE; APPORTIONMENT OF COSTS. (a) Except as hereinafter provided, when an employee organization has been designated, in accordance with the provisions of sections 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit, the chief executive officer, whether elected or appointed, or his designated representative or representatives, shall represent the municipal employer in collective bargaining with such employee organization.

"(b) Any agreement reached by the negotiators shall be reduced to writing. Except where the legislative body is the town meeting, a request for funds necessary to implement such written agreement and for approval of any provisions of the agreement which are in conflict with any charter, special act, ordinance, rule or regulation adopted by the municipal employer or its agents, such as a personnel board or civil service commission, or any general statute directly regulating the hours of work of policemen or firemen or any general statute providing for the method or manner of covering or removing employees from coverage under the Connecticut municipal employees' retirement system or under the Policemen and Firemen Survivors' Benefit Fund shall be submitted by the bargaining representative of the municipality within fourteen days of the date on which such agreement is reached to the legislative body which may approve or reject such request as a whole by a majority vote of those present and voting on the matter; but, if rejected, the matter shall be returned to the parties for further bargaining. . . . Such request shall be considered approved if the legislative body fails to vote to approve or reject such request within thirty days of the end of the fourteen-day period for submission to said body. Where the legislative body is the town meeting, approval of the agreement by a majority of the selectmen shall make the agreement valid and binding upon the town and the board of finance shall appropriate or provide whatever funds are necessary to comply with such collective bargaining agreement.

"(c) Notwithstanding any provision of any general statute, charter, special act or ordinance to the contrary, the budget-appropriating authority

Each of the plaintiffs, the National Association of Government Employees, Local RI-52, and the Inter-

of any municipal employer shall appropriate whatever funds are required to comply with a collective bargaining agreement, provided the request called for in subsection (b) of this section has been approved by the legislative body of such municipal employer, or with a collective bargaining agreement approved as the result of an arbitration decision rendered in an impasse of contract negotiations under section 7-472, or rendered in accordance with the provisions of section 7-473c."

[2] General Statutes § 7-473c provides in relevant part: "NEUTRAL ARBITRATOR SELECTION COMMITTEE. PANEL OF NEUTRAL ARBITRATORS. MANDATORY BINDING ARBITRATION; PROCEDURE; APPORTIONMENT OF COSTS. REJECTION OF AWARD BY LEGISLATIVE BODY OF THE MUNICIPAL EMPLOYER. SECOND ARBITRATION FORMAT. . . .

"(b) If neither the municipal employer nor the municipal employee organization has requested the arbitration services of the State Board of Mediation and Arbitration (1) within one hundred eighty days after the certification or recognition of a newly certified or recognized municipal employee organization required to commence negotiations pursuant to section 7-473a, or (2) within thirty days after the expiration of the current collective bargaining agreement . . . or . . . the date the parties to an existing collective bargaining agreement commence negotiations to revise said agreement on any matter affecting wages, hours, and other conditions of employment, said board shall notify the municipal employer and municipal employee organization that . . . binding and final arbitration is now imposed on them . . . . Within ten days of receipt of such notification, the chief executive officer of the municipal employer and the executive head of the municipal employee organization each shall select one member of the arbitration panel. Within five days of their appointment, the two members of the arbitration panel shall select a third member, who shall be an impartial representative of the interests of the public in general and who shall be selected from the panel of neutral arbitrators appointed pursuant to subsection (a) of this section. Such third member shall be the chairman of the panel. . . .

"(c) Within ten days of appointment of the chairman, the arbitration panel shall, by call of its chairman, hold a hearing within the municipality involved. . . .

"(d) (1) The hearing may, at the discretion of the panel, be continued and shall be concluded within twenty days after its commencement. Not less than two days prior to the commencement of the hearing, each party shall file with the chairman of the panel, and deliver to the other party, a proposed collective bargaining agreement, in numbered paragraphs, which such party is willing to execute and cost data for all provisions of such proposed agreement. At the commencement of the hearing each party shall file with the panel a reply setting forth (A) those paragraphs of the proposed agreement of the other party which it is willing to accept, and (B) those para-

national Brotherhood of Police Officers, Local 564 (unions), had a collective bargaining agreement with

graphs of the proposed agreement of the other party which it is unwilling to accept, together with any alternative contract language which such party would accept in lieu of those paragraphs of the proposed agreement of the other party which it is unwilling to accept. At any time prior to the issuance of a decision by the panel, the parties may jointly file with the panel stipulations setting forth the agreement provisions which both parties have agreed to accept. Within five days after the conclusion of the taking of testimony, the panel shall forward to each party an arbitration statement, approved by a majority vote of the panel, setting forth all agreement provisions agreed upon by both parties in the proposed agreements and the replies, and in the stipulations, and stating, in numbered paragraphs, those issues which are unresolved. Within ten days after the conclusion of the taking of the testimony, the parties shall file with the secretary of the State Board of Mediation and Arbitration five copies of their statements of last best offer setting forth, in numbered paragraphs corresponding to the statement of unresolved issues contained in the arbitration statement, the final agreement provisions proposed by such party. Immediately upon receipt of both statement[s] of last best offer or upon the expiration of the time for filing such statements of last best offer, whichever is sooner, said secretary shall distribute a copy of each such statement of last best offer to the opposing party. Within seven days after the distribution of the statements of last best offer or within seven days of the expiration of the time for filing the statements of last best offer, whichever is sooner, the parties may file with the secretary of the State Board of Mediation and Arbitration five copies of their briefs on the unresolved issues. Immediately upon receipt of both briefs or upon the expiration of the time for filing such briefs, whichever is sooner, said secretary shall distribute a copy of each such brief to the opposing party. Within five days after the distribution of the briefs on the unresolved issues or within five days after the last day for filing such briefs, whichever is sooner, each party may file with said secretary five copies of a reply brief, responding to the briefs on the unresolved issues. Immediately upon receipt of the reply briefs or upon the expiration of the time for filing such reply briefs, whichever is sooner, said secretary shall simultaneously distribute a copy of each such reply brief to the opposing party. Within twenty days after the last day for filing such reply briefs, the panel shall issue, upon majority vote, and file with the State Board of Mediation and Arbitration its decision on all unresolved issues set forth in the arbitration statement, and said secretary shall immediately and simultaneously distribute a copy thereof to each party. The panel shall treat each unresolved issue set forth in the arbitration statement as a separate question to be decided by it. In deciding each such question, the panel agreement shall accept the final provision relating to such unresolved issue as contained in the statement of last best offer of one party or the other. As

the defendant, the borough of Jewett City, that expired on July 1, 1992. Because the parties were at an impasse,

part of the arbitration decision, each member shall state the specific reasons and standards used in making his choice on each unresolved issue. The parties may jointly file with the panel stipulations modifying, deferring or waiving any or all provisions of this subsection. . . .

"(2) In arriving at a decision, the arbitration panel shall give priority to the public interest and the financial capability of the municipal employer, including consideration of other demands on the financial capability of the municipal employer. The panel shall further consider the following factors in light of such financial capability: (A) The negotiations between the parties prior to arbitration; (B) the interests and welfare of the employee group; (C) changes in the cost of living; (D) the existing conditions of employment of the employee group and those of similar groups; and (E) the wages, salaries, fringe benefits, and other conditions of employment prevailing in the labor market, including developments in private sector wages and benefits.

"(3) The decision of the panel and the resolved issues shall be final and binding upon the municipal employer and the municipal employee organization except as provided in subdivision (5) of this subsection and, if such award is not rejected by the legislative body pursuant to said subdivision, except that a motion to vacate or modify such decision may be made in accordance with sections 52-418 and 52-419. . . .

"(5) Within twenty-five days of the receipt of an arbitration award issued pursuant to this section, the legislative body of the municipal employer may reject the award of the arbitrators or single arbitrator by a two-thirds majority vote of the members of such legislative body present at a regular or special meeting called and convened for such purpose. Within ten days after such rejection, the legislative body or its authorized representative shall be required to state, in writing, the reasons for such vote and shall submit such written statement to the State Board of Mediation and Arbitration and the municipal employee organization. Within ten days after receipt of such notice, the municipal employee organization shall prepare a written response to such rejection and shall submit it to the legislative body and the State Board of Mediation and Arbitration. Within ten days after receipt of such rejection notice, the State Board of Mediation and Arbitration shall select a review panel of three arbitrators or, if the parties agree, a single arbitrator who are residents of Connecticut and labor relations arbitrators approved by the American Arbitration Association and not members of the panel who issued the rejected award. Such arbitrators or single arbitrator shall review the decision on each such rejected issue. The review conducted pursuant to this subdivision shall be limited to the record and briefs of the hearing pursuant to subsection (c) of this section, the written explanation of the reasons for the vote and a written response by either party. In conducting such review, the arbitrators or single arbitrator shall be limited to consideration of the criteria set forth in subdivi-

the Connecticut state board of mediation and arbitration, acting pursuant to § 7-473c (b), imposed binding arbitration upon them and appointed an arbitration panel to hear their disputes.

After several days of hearings before the arbitration panel, the unions and the defendant reached complete agreements on all unresolved issues. As a result, on May 11, 1993, the unions and the defendant "agree[d] to waive the provisions of Conn. Gen. Stat. § 7-473c and stipulate[d] to the attached collective bargaining agreement as the award of the panel of arbitrators . . . ." That same day, the arbitration panel issued, as its awards, the unsigned collective bargaining agreements of the parties.[3]

---

sion (2) of this subsection. Such review shall be completed within twenty days of the appointment of the arbitrators or single arbitrator. The arbitrators or single arbitrator shall accept the last best offer of either of the parties. Within five days after the completion of such review the arbitrators or single arbitrator shall render a decision with respect to each rejected issue which shall be final and binding upon the municipal employer and the employee organization except that a motion to vacate or modify such award may be made in accordance with sections 52-418 and 52-419. The decision of the arbitrators or single arbitrator shall be in writing and shall include specific reasons and standards used by each arbitrator in making his decision on each issue. The decision shall be filed with the parties. . . .

"(f) A municipal employer and a municipal employee organization may, at any time, file with the State Board of Mediation and Arbitration a joint stipulation modifying, deferring or waiving any or all of the provisions of this section, or modifying, deferring or waiving any or all of the provisions of a previously filed stipulation, and any such stipulation shall be controlling over the provisions of this section or of any previously filed stipulation.

"(g) No party may submit for binding arbitration pursuant to this section any issue or proposal which was not presented during the negotiation process, unless the submittal of such additional issue or proposal is agreed to by the parties."

[3] The award in the case involving the plaintiff International Brotherhood of Police Officers, Local 564, stated:

"STIPULATED AWARD

"After several days of hearings before the below signed panel, the parties reach[ed] agreement upon all unresolved issue[s] on May 11, 1993 and submitted the following stipulation to the Panel:

"The Borough of Jewett City Police Department and the IBPO Local 564

On March 31, 1993, No. 93-4 of the 1993 Special Acts was enacted, authorizing a receivership for the defendant. The receivership was established on June 12, 1993, and, on June 23, 1993, the governor appointed C. Francis Driscoll as the receiver to manage the defendant's fiscal affairs.

On June 22, 1993, the unions filed applications for confirmation of the stipulated awards pursuant to General Statutes § 52-417.[4] The unions cited the borough as the defendant, but in each case the receiver was subsequently permitted to intervene as a party defendant.[5] Without filing motions to vacate, modify or correct the awards, the receiver sought to have the applications to confirm dismissed or denied for lack of jurisdiction.[6] The trial court, *M. Hennessey, J.*, denied the receiver's motions to dismiss and the trial court, *O'Neill, J.*, granted the unions' applications to confirm. The receiver appealed from the judgments of the trial court

agree to waive the provisions of Conn. Gen. Stat. § 7-473c and stipulate to the attached collective bargaining agreement as the award of the panel of arbitrators in Case No. 9192-MBA-256.

"Accordingly, the panel hereby issues the attached stipulated collective bargaining agreement as the award of the panel."

Except for the identification of the proper parties and case number, an identically worded award was issued in the companion case.

[4] General Statutes § 52-417 provides: "APPLICATION FOR ORDER CONFIRMING AWARD. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[5] In each case, the defendant filed an answer, admitting the factual allegations in the unions' applications and deferring to the receiver for a response to the unions' claims of law.

[6] We express no opinion about the timeliness of the motions filed by the receiver.

to the Appellate Court, and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The receiver's appeals raise three issues. He maintains that the trial court improperly concluded that § 52-417 authorized judicial confirmation of the stipulated awards because: (1) an award resulting from the stipulation of the parties is a collective bargaining agreement governed by § 7-474 rather than an arbitral award governed by § 7-473c and therefore § 52-417 is inapplicable; (2) the jurisdiction of the trial court to confirm an arbitral award can be challenged either by a motion to dismiss or by an objection to an application to confirm the award; and (3) the procedural requirements of § 52-417 do not govern compulsory arbitral awards under § 7-473c. Because we agree with the receiver that, in the circumstances of this case, reversal of the trial court's judgments is required on the first issue, we need not address the others.

## I

Analysis of the competing claims of the parties in these appeals requires examination of the statutory background of municipal employee collective bargaining. MERA empowers the state board of mediation and arbitration to impose mandatory binding arbitration whenever collective bargaining negotiations between municipalities and the representatives of their employees have reached an impasse. General Statutes § 7-473c (b). "The evident purpose of the compulsory arbitration feature of § 7-473c is to avoid strikes and their attendant disruptions of municipal services by providing a mechanism to resolve by arbitration those issues concerning which the parties to an expiring municipal collective bargaining agreement have been unable to reach agreement by negotiations." *Carofano* v. *Bridgeport*, 196 Conn. 623, 631, 495 A.2d 1011 (1985).

The mandatory binding arbitration that is authorized by MERA does not permit the arbitration panel to exercise the broad discretion normally associated with consensual arbitration. Section 7-473c (d) limits the discretion of the arbitration panel in two significant respects. First, with regard to any issue that the parties have not been able to resolve themselves, the statute confines the discretion of the arbitration panel to a choice between the "last best offer" of one party or another. General Statutes § 7-473c (d) (1). "This narrowing of the scope of arbitrator discretion to a choice between two proposals as formulated by the parties upon an unresolved issue significantly circumscribes what might otherwise be deemed [an unconstitutionally] broad delegation of legislative power." *Carofano* v. *Bridgeport*, supra, 196 Conn. 635. Second, in the exercise of a choice between one or another "last best offer," the arbitration panel must "give priority to the public interest and the financial capability of the municipal employer . . . ." General Statutes § 7-473c (d) (2). This further limitation on arbitral discretion lends additional support to the constitutional validity of MERA. *Carofano* v. *Bridgeport*, supra, 635.

When an arbitration panel exercises the limited discretion conferred upon it by MERA, the "decision of the panel and the resolved issues" ordinarily are final and binding upon the municipal employer and the union. General Statutes § 7-473c (d) (3). Pursuant to § 7-473c (d) (5), however, the legislative body of the municipal employer may reject the award by "a two-thirds majority vote of the members of such legislative body present at a regular or special meeting called and convened for such purpose." Such a rejection triggers further mandatory arbitral review of each "rejected issue" by a new arbitration panel that must take as its point of departure the unresolved issues initially considered by the original arbitration panel. General Stat-

utes § 7-473c (d) (5). The award of the new arbitration panel, or of the original panel in the absence of a legislative rejection, may be vacated or modified upon appeal to the Superior Court on one of the limited grounds for judicial review stated in General Statutes §§ 52-418 and 52-419.[7] See General Statutes § 7-473c (d) (3) and (5).

MERA does not, however, require municipalities and the representatives of their employees to rely completely and exclusively on the arbitration proceedings authorized by § 7-473c. Pursuant to § 7-474, the parties continue to have the power to reach an acceptable collective bargaining agreement through negotiation, although they are required, by subsection (b), to reduce

---

[7] General Statutes § 52-418 provides in relevant part: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . .

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

General Statutes § 52-419 provides in relevant part: "MODIFICATION OR CORRECTION OF AWARD. (a) Upon the application of any party to an arbitration, the superior court . . . shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.

"(b) The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

such an agreement to writing. More significantly, subsection (b) goes on to provide: "Except where the legislative body is the town meeting, a request for funds necessary to implement such written agreement and for approval of any provisions of the agreement which are in conflict with any charter, special act, ordinance, rule or regulation adopted by the municipal employer or its agents . . . or any [otherwise applicable] general statute . . . shall be submitted by the bargaining representative of the municipality within fourteen days of the date on which such agreement is reached to the legislative body which may approve or reject such request as a whole by a majority vote of those present and voting on the matter . . . ." In contradistinction to arbitral awards under § 7-473c, therefore, collective bargaining agreements are subject to municipal legislative rejection by a simple majority vote rather than by a two-thirds majority vote. Furthermore, § 7-474 contains no provision for the appointment of an arbitration panel to review legislative rejection of a collective bargaining agreement and does not authorize judicial review in accordance with the procedures of §§ 52-418 or 52-419.

II

The current appeals require us to determine what procedures the legislature contemplated in circumstances that include, on the one hand, aspects of compulsory arbitration under § 7-473c and, on the other hand, aspects of collective bargaining under § 7-474. The significant undisputed facts are that, subsequent to the proper initiation of arbitration hearings, the parties reached an agreement on all unresolved issues and manifested that agreement by waiving the provisions of § 7-473c and by presenting their negotiated collective bargaining agreements to the arbitration panel for issuance as the panel's stipulated awards.

As a result of the agreements of the parties, the arbitration panel had no occasion to exercise the functions ordinarily contemplated by § 7-473c (d) (1). The subdivision states that the panel "shall issue . . . its decision on all unresolved issues set forth in the arbitration statement . . . . The panel shall treat each unresolved issue set forth in the arbitration statement as a separate question to be decided by it. In deciding each such question, the panel agreement shall accept the final provision relating to such unresolved issue as contained in the statement of last best offer of one party or the other. As part of the arbitration decision, each member shall state the specific reasons and standards used in making his choice on each unresolved issue." In § 7-473c (d) (1) and (f), the legislature expressly provided authority, however, for the parties to file a joint stipulation "modifying, deferring or waiving any or all provisions" of the subdivision or of the section as a whole.

Considering the import of these various provisions within § 7-473c, we must determine the extent to which the legislature intended to limit the authority of the parties to modify the arbitration procedures contemplated by the statute. Once an impasse in collective bargaining has led to the imposition of compulsory arbitration, must the arbitration process be completed and an arbitral award be issued, or do the parties retain the power to substitute consensual collective bargaining for the exercise of arbitral judgment? Apart from the waiver provisions and the implications to be drawn therefrom, the parties have pointed to no definitive language to resolve this issue, either in the text of the statute or in the legislative history.

"We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legisla-

ture. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 499, 646 A.2d 1289 (1994); *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507–508, 636 A.2d 1342 (1994); *Peck* v. *Jacquemin*, 196 Conn. 53, 63–66, 491 A.2d 1043 (1985). We are obligated to search for a construction of the statute that makes a harmonious whole of its constituent parts. *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 679, 628 A.2d 957 (1993); *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council*, 215 Conn. 474, 482–83, 576 A.2d 510 (1990); *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 575, 522 A.2d 763 (1987).

In light of the legislature's detailed description of the limited powers of the arbitration panel authorized by § 7-473c (d), we are persuaded that the legislature intended this statutory procedure to complement rather than to displace the process of collective bargaining. As the unions themselves acknowledge in their briefs, "the structure of mandatory binding arbitration is designed to encourage the parties to settle their disputes." In its search for an orderly process that would avoid the disruption of labor stoppages by municipal employees, the legislature focused the authority of the arbitration panel on the parties' own last best offers in order to facilitate continued collective bargaining even after the parties had found themselves at an impasse.[8] The waiver provisions in § 7-473c underscore

---

[8] See *In the Matter of City of Groton and Local 1964, IAFF*, Connecticut State Board of Labor Relations Decision No. 3161, November 24, 1993,

the importance that the legislature assigned to protection of the parties' autonomous control over their labor relations. Having reserved for the parties the right to waive § 7-473c proceedings in their entirety, the legislature is unlikely to have intended that the parties would irretrievably relinquish the right to resolve their differences through collective bargaining once compulsory arbitration has begun.

The question then becomes how the parties can effectively manifest the fact that they have returned to the bargaining table to resolve the remaining issues on which they had previously been in disagreement. In effect, the unions argue that consent to the issuance of a stipulated award by the arbitration panel reflects the understanding of the parties that, rather than relying on collective bargaining, they are continuing to invoke the authority of the arbitration panel to render an arbitration decision. The receiver argues, to the contrary, that the ministerial recording of collective bargaining agreements as stipulated arbitral awards does not automatically transform the agreements into full-blown arbitration "decisions" so as to trigger judicial review pursuant to §§ 52-418 and 52-419. The receiver emphasizes that, in enacting § 7-473c (d), the legislature directed the arbitration panel to exercise its discretion in choosing among the parties' last best offers and that a stipulated award derived entirely from the agreement of the parties, because it preserves no opportunity for the exercise of arbitral discretion, is not within the contemplation of the statute. As the receiver observes, if the legislature had wished to provide that arbitral awards derived from settlement of the parties'

p. 9. In that case, the board found as a fact that the parties had "technically moved into binding arbitration, although no proceedings were ever held." Id., p. 4. When the parties thereafter reached an agreement, the board analyzed the rights of the parties under § 7-474 (b) without referring to § 7-473c.

disputes, rather than from a decision of the arbitrators, would have the same status and effect as other arbitral awards, the legislature could have so stated, as it did expressly in enacting General Statutes § 50a-130.[9] See *Electrical Contractors, Inc.* v. *Tianti,* 223 Conn. 573, 583, 613 A.2d 281 (1992); *Buonocore* v. *Branford,* 192 Conn. 399, 403, 471 A.2d 961 (1984). We agree with the receiver and conclude, therefore, that stipulated awards are not automatically arbitral awards for the purposes of §§ 7-473c and 52-417.

We are persuaded that the stipulated awards incorporating in their entirety the collective bargaining agreements of the parties were not, in the context of these cases, arbitral awards that conferred jurisdiction on the Superior Court pursuant to § 52-417. That context includes the parties' concomitant express waivers of further proceedings pursuant to § 7-473c. These waivers cast serious doubt on the continued existence of the statutory underpinning for invocation of judicial review pursuant to §§ 52-418 and 52-419, because access to such judicial review depends upon the applicability of § 7-473c (d). In this context, the fact that the arbitration panel attached the label "stipulated award" to each stipulated collective bargaining agreement does not alter the reality that the awards represented nothing other than the parties' own agreements resolving all remaining issues between them.

---

[9] General Statutes § 50a-130 is part of the United Nations Commission on International Trade Law Model Law on International Commercial Arbitration. See General Statutes § 50a-100. Section 50a-130 provides: "SETTLEMENT. (1) If, during arbitral proceedings, the parties settle the dispute, the arbitral tribunal shall terminate the proceeding and, if requested by the parties and not objected to by the arbitral tribunal, record the settlement in the form of an arbitral award on agreed terms.

"(2) An award on agreed terms shall be made in accordance with the provisions of section 50a-131 and shall state that it is an award. Such an award has the same status and effect as any other award on the merits of the case."

In the absence of actual arbitral awards by the arbitration panel as contemplated by § 7-473c, the trial court lacked subject matter jurisdiction under § 52-417 to consider the applications for confirmation filed by the unions. There is no common law right to judicial review of a collective bargaining agreement.[10] There is similarly no common law right to judicial review of a compulsory arbitral award that is itself the creature of statute. The absence of compliance with the statutory requirements for such an award deprived the trial court of jurisdiction just as the absence of compliance with statutory requirements for administrative appeals deprives trial courts of jurisdiction. See *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 799, 629 A.2d 367 (1993); *Tarnopol* v. *Connecticut Siting Council*, 212 Conn. 157, 163, 561 A.2d 931 (1989); *Park City Hospital* v. *Commission on Hospitals & Health Care*, 210 Conn. 697, 702, 556 A.2d 602 (1989). The trial court, therefore, should have granted the receiver's motions to dismiss.

The judgments are reversed and the cases are remanded to the trial court with direction to render judgments dismissing the plaintiffs' applications.

In this opinion the other justices concurred.

[10] We express no opinion about the validity of the collective bargaining agreements as contracts. According to the briefs of the parties, that issue, with respect to the International Brotherhood of Police Officers, Local 564, is currently pending before the Connecticut state board of labor relations.