******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# BRASS CITY LOCAL, CACP *v.* CITY OF WATERBURY
## (SC 20337)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker*

*Syllabus*

The plaintiff, a collective bargaining unit that represented employees of the Waterbury Police Department, appealed from the trial court's judgment dismissing for lack of subject matter jurisdiction the plaintiff's application to confirm an interest arbitration award that had been issued pursuant to statute (§ 7-473c). The plaintiff and the defendant city, which were parties to an expired collective bargaining agreement, entered into mandatory, binding arbitration after they failed to negotiate a successor agreement. The resulting arbitration award determined the terms and conditions of the successor agreement. The city filed a motion to dismiss the plaintiff's application to confirm, contending that the trial court lacked subject matter jurisdiction to consider it. In granting the city's motion, the trial court concluded, inter alia, that § 7-473c did not, by its terms, authorize judicial review of an interest arbitration award by way of an application to confirm filed pursuant to statute (§ 52-417). On appeal from the dismissal of the plaintiff's application to confirm, *held* that the trial court correctly determined that it lacked jurisdiction under § 52-417 to confirm an interest arbitration award issued pursuant to § 7-473c and, accordingly, properly granted the city's motion to dismiss: the provisions of chapter 909 of the General Statutes, including § 52-417, which generally govern agreements to arbitrate and arbitration proceedings, apply solely to arbitral awards resulting from written agreements to arbitrate, and it was undisputed that the parties' arbitration was not conducted pursuant to such an agreement but, rather, in accordance with the mandatory arbitration provisions of § 7-473c; moreover, although § 7-473c explicitly provides that parties may seek to vacate or modify an interest arbitration award under the statutes (§§ 52-418 and 52-419) governing applications to vacate and to modify arbitration awards, respectively, § 7-473c does not provide that parties may seek to confirm an interest arbitration award under § 52-417, and the failure of the legislature to authorize confirmation of an interest arbitration award issued pursuant to § 7-473c was intentional and not an oversight.

Argued November 19, 2019—officially released December 9, 2020**

*Procedural History*

Application to confirm an arbitration award, brought to the Superior Court in the judicial district of Waterbury, where the court, *Brazzel-Massaro*, *J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed. *Affirmed*.

*Stephen F. McEleney*, with whom was *David S. Taylor*, for the appellant (plaintiff).

*Joseph B. Summa*, for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiff, Brass City Local, CACP (union), a collective bargaining unit representing employees of the Waterbury Police Department, appeals[1] from the judgment of the trial court granting the motion to dismiss of the defendant, the city of Waterbury (city), for lack of subject matter jurisdiction. The union filed this action, seeking to have the trial court confirm an interest arbitration award issued in accordance with the provisions of General Statutes § 7-473c[2] of the Municipal Employees Relations Act (MERA), General Statutes § 7-467 et seq. The union contends that the trial court incorrectly determined that it lacked subject matter jurisdiction to confirm the award under General Statutes § 52-417.[3] We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The union and the city were parties to a collective bargaining agreement (agreement) that expired on June 30, 2012. On or about February 28, 2013, the parties began negotiating a successor agreement. After reaching an impasse in the negotiations, the parties, in accordance with § 7-473c, entered into compulsory binding arbitration before a panel of the state Board of Mediation and Arbitration. On April 18, 2016, the panel filed an arbitration statement, which included contractual provisions agreed on by the parties, as well as a list of unresolved issues to be determined by the panel. The parties thereafter submitted their last best offers with respect to each of the unresolved issues, and, on November 7, 2016, the arbitration panel issued its award. Approximately, one month later, the Waterbury Board of Aldermen (board of alderman) approved the award. Neither party filed a motion to vacate or to modify the award pursuant to § 7-473c (d) (10).[4]

On January 18, 2017, after the city began paying union members certain retroactive wages in accordance with the new agreement, the union requested that the city pay its members retroactive extra duty wages, which it believed were due under article VI of the agreement.[5] In a letter to the union dated January 26, 2017, the city denied the union's request for retroactive extra duty wages on the ground that no such payments were due under the agreement. In response, the union filed a complaint with the state Board of Labor Relations (labor board), alleging that the city had engaged in a prohibited practice under General Statutes § 7-470 (a) (6)[6] by refusing to pay the retroactive extra duty wages. The city subsequently filed a complaint with the labor board, alleging, inter alia, that the union's complaint had been filed in bad faith.

The city eventually withdrew its complaint and moved to dismiss the union's complaint on the ground

that the labor board lacked subject matter jurisdiction to consider the union's claims. Specifically, the city argued that § 7-470 (a) (6), by its express terms, applies only to grievance arbitration awards rendered in accordance with the provisions of General Statutes § 7-472, whereas the parties' interest arbitration award was rendered in accordance with the provisions of § 7-473c. The city maintained, moreover, that the union's claim that the city wrongfully refused to afford extra duty pay increases on a retroactive basis was "a mere breach of contract claim over which [the labor board had] no jurisdiction absent proof of repudiation," which the union had not alleged. In the absence of such proof, the city asserted, the union's sole recourse was to pursue the grievance procedures outlined in article XVI of the agreement applicable to breach of contract claims.[7]

On October 30, 2017, while the union's complaint was still pending before the labor board, the union filed an application in the trial court to confirm the interest arbitration award pursuant to § 52-417. After the labor board granted the city's motion to dismiss the union's complaint, the city filed a motion in the trial court seeking dismissal of the union's application to confirm for lack of subject matter jurisdiction. In support of its motion, the city argued, inter alia, that, by virtue of its plain language, chapter 909 of the General Statutes; see General Statutes §§ 52-408 through 52-424; applies only to arbitration awards resulting from written agreements to arbitrate, and not to interest arbitration awards resulting from compulsory arbitration conducted in accordance with § 7-473c. The city further argued that, although § 7-473c authorizes judicial review of interest arbitration awards via applications to vacate or to modify pursuant to General Statutes §§ 52-418 and 52-419, respectively; see General Statutes § 7-473c (d) (10);[8] § 7-473c does not authorize judicial review by way of an application to confirm brought pursuant to § 52-417. Thus, the city maintained, the court lacked subject matter jurisdiction to consider the union's application to confirm.

The union objected to the city's motion to dismiss, claiming, inter alia, that, contrary to the city's assertions, the statutory scheme governing consensual arbitration proceedings set forth in chapter 909 applies not only to written agreements to arbitrate but to statutory arbitration proceedings, as well. According to the union, although § 7-473c does not expressly authorize judicial review of an interest arbitration award via an application to confirm, it reasonably can be inferred that such an application "is the mechanism through which the arbitration decision becomes final and binding" in light of the fact that § 7-473c references other provisions of chapter 909, namely, §§ 52-418 and 52-419.

Following a hearing, the trial court granted the city's motion to dismiss, agreeing with the city that the court

lacked subject matter jurisdiction to consider the union's application to confirm. The court reasoned that statutes in derogation of the common law, such as the statutory scheme contained in chapter 909, must be strictly construed and that, by its express terms, "a written agreement to arbitrate is required to fall within the purview of chapter 909. While arbitration awards that take place pursuant to statute may be subject to judicial review, the enabling statute at issue must specifically authorize it." Because, the court further explained, § 7-473c does not, by its terms, authorize judicial review of an interest arbitration award by way of an application to confirm under § 52-417, the court lacked jurisdiction to consider the union's application.

In reaching its decision, the trial court noted that other arbitration statutes, such as General Statutes § 38a-9 (b) (2), which governs disputes between insurance companies and claimants, and General Statutes § 42-181 (c) (4), which pertains to disputes between automobile manufacturers and consumers, specifically authorize judicial review of arbitration awards by use of applications to vacate, to modify *and* to confirm, whereas § 7-473c (d) contains no such language. In the trial court's view, this omission was significant because, if the legislature had wanted to authorize judicial review of an interest arbitration award by way of an application to confirm, it simply could have stated as much, as it did in the other statutory provisions. Finally, the trial court observed that, contrary to the assertions of the union, it was apparent that no further action was required to finalize and render binding on the parties a collective bargaining agreement resulting from interest arbitration conducted pursuant to § 7-473c because subsection (d) (10) of that statute expressly provides that "[t]he decision of the panel and the resolved issues shall be final and binding" on the parties.

On appeal, the union claims that the trial court improperly dismissed its application to confirm the interest arbitration award. The union contends that, even if statutes authorizing judicial review of arbitration awards are in derogation of the common law and must be strictly construed, § 7-473c, unlike those provisions, is a remedial statute and, as such, should be liberally construed to permit confirmation of an interest arbitration award. The union argues that the purpose of § 7-473c is "to provide for the orderly and timely resolution of labor disputes" and that interpreting § 7-473c to authorize applications to confirm furthers this goal by "provid[ing] parties to binding [interest] arbitration assurance that the outcome [of the arbitration proceeding] will be respected and enforced." We reject the union's contention.[9]

It is well established that MERA "imposes compulsory arbitration on a municipality and the representatives of its employees whenever the parties have reached

an impasse in their collective bargaining." *International Brotherhood of Police Officers, Local 564* v. *Jewett City*, 234 Conn. 123, 124, 661 A.2d 573 (1995); see General Statutes § 7-473c (b). The primary purpose of interest arbitration under § 7-473c "is to avoid strikes and their attendant disruptions of municipal services by providing a mechanism to resolve by arbitration those issues concerning which the parties to an expiring municipal collective bargaining agreement have been unable to reach agreement by negotiations." (Internal quotation marks omitted.) Id., 131; see also C. Fisk & A. Pulver, "First Contract Arbitration and the Employee Free Choice Act," 70 La. L. Rev. 47, 50 (2009) ("Interest arbitration is nothing new: it is a time-tested process in which the terms and conditions of employment are established by a final and binding decision of an arbitrator or an arbitration panel. Unlike grievance arbitration, a process that seeks to interpret and apply the rules of an existing contract to determine whether a breach has occurred, interest arbitration is designed to develop the contractual rules that will govern the relationship going forward." (Footnote omitted.)).

"The mandatory binding arbitration that is authorized by MERA does not permit the arbitration panel to exercise the broad discretion normally associated with consensual arbitration. Section 7-473c (d) limits the discretion of the arbitration panel in two significant respects. First, with regard to any issue that the parties have not been able to resolve themselves, the statute confines the discretion of the arbitration panel to a choice between the 'last best offer' of one party or another. General Statutes § 7-473c (d) [6]. . . . Second, in the exercise of a choice between one or another 'last best offer,' the arbitration panel must 'give priority to the public interest and the financial capability of the municipal employer . . . .' General Statutes § 7-473c (d) [9]. . . .

"When an arbitration panel exercises the limited discretion conferred [on] it by MERA, the 'decision of the panel and the resolved issues' ordinarily are final and binding [on] the municipal employer and the union. General Statutes § 7-473c (d) [10]. Pursuant to § 7-473c (d) [12], however, the legislative body of the municipal employer may reject the award by 'a two-thirds majority vote of the members of such legislative body present at a regular or special meeting called and convened for such purpose.' Such a rejection triggers further mandatory arbitral review of each 'rejected issue' by a new arbitration panel that must take as its point of departure the unresolved issues initially considered by the original arbitration panel. General Statutes § 7-473c (d) [14]. The award of the new arbitration panel, or of the original panel in the absence of a legislative rejection, may be vacated or modified upon appeal to the Superior Court on one of the limited grounds for judicial review stated in . . . §§ 52-418 and 52-419. See General Statutes § 7-473c (d) [10] and [15]." (Citations omitted; footnote

omitted.) *International Brotherhood of Police Officers, Local 564* v. *Jewett City*, supra, 234 Conn. 132–33.

Whether, as the union claims, the award of the arbitration panel also may be confirmed[10] by the Superior Court in accordance with the provisions of § 52-417 is an issue of statutory construction over which we exercise plenary review. See, e.g., *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006). Our fundamental objective in construing a statute "is to ascertain and give effect to the apparent intent of the legislature . . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply . . . . In seeking to determine the meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Williams* v. *New Haven*, 329 Conn. 366, 375, 186 A.3d 1158 (2018).

As the trial court explained, it is well established that the provisions of chapter 909 of the General Statutes, including § 52-417, apply solely to arbitral awards resulting from written agreements to arbitrate. See, e.g., *Bennett* v. *Meader*, 208 Conn. 352, 360–61, 545 A.2d 553 (1988) ("The statutes relating to, and governing, arbitration in this state are set out in chapter 909 of the General Statutes. The basis for arbitration in a particular case is to be found in the written agreement between the parties. . . . [As with] other statutory arbitration schemes, such as the United States Arbitration Act, 9 U.S.C. [§ 1 et seq.], which is modeled after the Uniform Arbitration Act, *the parties must have a written agreement to gain the benefit of its provisions*." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.)). Thus, we have held that "a trial court cannot confirm an arbitration award unless the parties expressly have agreed to arbitrate the matter . . . . This is consistent with a review of the broader statutory scheme. . . . General Statutes § 52-421 (a) requires that '[a]ny party applying for an order confirming, modifying or correcting an award shall, at the time the order is filed with the clerk [of the court] for the entry of judgment thereon, file the following papers with the clerk: (1) The agreement to arbitrate . . . .' This suggests that, at the very minimum, a trial court must determine whether there is an agreement to arbitrate before it [may confirm] an award on the basis of that agreement." (Emphasis omitted.) *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 395–96, 926 A.2d 1035 (2007). Accordingly, because it is undisputed that the parties' arbitration was not con-

ducted pursuant to a written agreement to arbitrate but, rather, in accordance with the mandatory arbitration provisions of § 7-473c, the trial court lacked jurisdiction to entertain the union's application unless § 7-473c authorizes judicial review of an interest arbitration award via an application to confirm under § 52-417. See, e.g., *International Brotherhood of Police Officers, Local 564* v. *Jewett City*, supra, 234 Conn. 139 ("There is . . . no [common-law] right to judicial review of a compulsory arbitral award that is itself the creature of statute. The absence of compliance with the statutory requirements for such an award deprive[s] the trial court of jurisdiction just as the absence of compliance with statutory requirements for administrative appeals deprives trial courts of jurisdiction.").

Section 7-473c (d) (10) provides: "The decision of the panel and the resolved issues shall be final and binding upon the municipal employer and the municipal employee organization except as provided in subdivision (12) of this subsection and, if such award is not rejected by the legislative body pursuant to said subdivision, except that a motion to vacate or modify such decision may be made in accordance with sections 52-418 and 52-419." Thus, § 7-473c explicitly provides that parties may seek to vacate or modify an interest arbitration award under §§ 52-418 and 52-419, respectively, but does not provide that parties may seek to confirm an award under § 52-417. We agree with the trial court that this omission is telling and, ultimately, dispositive of the union's appeal. As the trial court explained, other statutes authorizing arbitration, including statutes requiring mandatory binding arbitration, expressly authorize applications to modify, to vacate *and to confirm* an arbitrator's award. See, e.g., General Statutes § 38a-9 (b) (2) ("[e]ither party may make application to the superior court . . . for an order confirming, vacating, modifying or correcting any award, in accordance with the provisions of sections 52-417, 52-418, 52-419 and 52-420"); General Statutes § 42-181 (c) (4) (same). These provisions indicate that, when the legislature wishes to authorize confirmation of an arbitration award via an application to confirm, it does so explicitly. Accordingly, we agree with the trial court that the failure of the legislature to authorize confirmation of an interest arbitration award issued pursuant to § 7-473c was intentional and not an oversight. See, e.g., *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 155, 12 A.3d 948 (2011) ("[o]ur case law is clear . . . that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent" (internal quotation marks omitted)); *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 205, 3 A.3d 56 (2010) ("The text of [General Statutes] § 19a-490 (a) . . . indicates that the legislature knows how to use the specific term 'nursing home' in our statutes when it intends to and thus suggests to us that

its failure to use that term in [General Statutes] § 12-62n was purposeful"); *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 299, 933 A.2d 256 (2007) (legislature knows how to convey its intent expressly).

In arguing to the contrary, the union contends primarily that, because MERA is a labor relations act, § 7-473c must be liberally construed to authorize judicial confirmation of an interest arbitration award. In the view of the union, this construction properly furthers the act's salutary purpose of "provid[ing] for the orderly and timely resolution of labor disputes . . . ." The union does not explain, however, how converting the parties' collective bargaining agreement into a judgment pursuant to an application to confirm furthers this goal in any material way.[11] See *Phoenix Windows, Inc.* v. *Viking Construction, Inc.*, 88 Conn. App. 74, 77 n.3, 868 A.2d 102 ("[c]onfirmation of an arbitration award [simply] converts it into an enforceable judgment of the Superior Court" (internal quotation marks omitted)), cert. denied, 273 Conn. 932, 873 A.2d 1001 (2005). Even if it did, the general tenet that directs a liberal construction of remedial statutes does not permit us to read words into such statutes when it is apparent that the legislature has opted not to include them. See, e.g., *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010) (in construing labor relations act, "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit" (internal quotation marks omitted)); see also *Robinson* v. *Guman*, 163 Conn. 439, 444, 311 A.2d 57 (1972) ("[t]his court should not be asked to read into the statutes words [that] are not there"). Accordingly, we conclude that the trial court correctly determined that it lacked jurisdiction under § 52-417 to confirm an interest arbitration award issued pursuant to § 7-473c.

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker. Although Chief Justice Robinson was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

The listing of justices reflects their seniority status on this court as of the date of oral argument.

** December 9, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The union appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 7-473c provides in relevant part: "(b) (1) If neither the municipal employer nor the municipal employee organization has requested the arbitration services of the State Board of Mediation and Arbitration (A) within one hundred eighty days after the certification or recognition of a newly certified or recognized municipal employee organization required to commence negotiations pursuant to section 7-473a, or (B) within thirty days after the expiration of the current collective bargaining agreement

. . . or . . . the date the parties to an existing collective bargaining agreement commence negotiations to revise said agreement on any matter affecting wages, hours, and other conditions of employment, said board shall notify the municipal employer and municipal employee organization that . . . binding and final arbitration is now imposed on them . . . .

"(2) Within ten days of receipt of written notification required pursuant to subdivision (1) of this subsection, the chief executive officer of the municipal employer and the executive head of the municipal employee organization each shall select one member of the arbitration panel. Within five days of their appointment, the two members of the arbitration panel shall select a third member, who shall be an impartial representative of the interests of the public in general and who shall be selected from the panel of neutral arbitrators appointed pursuant to subsection (a) of this section. Such third member shall be the chairperson of the panel. . . ."

[3] General Statutes § 52-417 provides in relevant part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. The court . . . shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[4] General Statutes § 7-473c (d) (10) provides: "The decision of the panel and the resolved issues shall be final and binding upon the municipal employer and the municipal employee organization except as provided in subdivision (12) of this subsection and, if such award is not rejected by the legislative body pursuant to said subdivision, except that a motion to vacate or modify such decision may be made in accordance with sections 52-418 and 52-419."

[5] Article VI of the agreement, which governs work assignments and extra duty, provides in relevant part: "Section 1. The terms 'Extra Police Duty' or 'Extra Police Work' shall mean assignments made for work in off-duty hours for some party or entity other than the Police Department . . . which other party or entity shall pay (and not the Police Department) the rate of pay prescribed in this Article. . . .

* * *

"Section 3 (a). Effective upon signing of this Agreement the hourly rate of pay for extra police duty for a police officer shall be as follows:

"1. When working for and paid by the City or the Board of Education, one and one-quarter . . . times the hourly rate for Sergeant;

"2. When working for or paid by a party other than the City or the Board of Education, one and one-half . . . times the hourly rate for Sergeant. . . ."

[6] General Statutes § 7-470 (a) provides in relevant part: "Municipal employers or their representatives or agents are prohibited from . . . (6) refusing to comply with a grievance settlement, or arbitration settlement, or a valid award or decision of an arbitration panel or arbitrator rendered in accordance with the provisions of section 7-472."

[7] Article XVI of the agreement provides in relevant part: "Section 1. The grievance procedure prescribed by this Article is established to seek an equitable resolution of problems that arise as a result of disputes concerning the misinterpretation, misapplication or violation of a specific provision of this Agreement. A grievance shall be defined as a dispute between the City and the Union or between an employee and the City involving an alleged violation, misapplication or misinterpretation of a specific provision of this Agreement . . . . Such grievances shall be processed in accordance with the grievance procedure steps outlined in Section 2 hereof. . . ." Section 2 of article XVI, in turn, provides for a multistep grievance procedure culminating in arbitration before the state Board of Mediation and Arbitration in the event the parties are unable to resolve their dispute through one of the initial steps. Section 3 of article XVI further provides that "[t]he decision of the Arbitrator, or of the Arbitration Panel, shall be final and binding on both parties."

[8] See footnote 4 of this opinion.

[9] We note, preliminarily, that, "because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction." (Citation omitted; internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 755, 900 A.2d 1 (2006).

[10] Once confirmed by a court, an arbitration award has the force and effect

of a judgment. See, e.g., *Phoenix Windows, Inc.* v. *Viking Construction, Inc.*, 88 Conn. App. 74, 77 n.3, 868 A.2d 102 ("[c]onfirmation of an arbitration award converts it into an enforceable judgment of the Superior Court" (internal quotation marks omitted)), cert. denied, 273 Conn. 932, 873 A.2d 1001 (2005).

[11] As the city argues, the dispute underlying this appeal is whether the city is required to pay retroactive extra duty wages under the parties' agreement once the actions of the interest arbitration panel and the board of alderman fully and finally determined the terms of that agreement. Article XVI of that agreement provides that any such dispute *shall be resolved* by the grievance procedures outlined in § 2 of article XVI of the agreement, none of which permits a party to bring an action to enforce the contract.

---