CITY OF HARTFORD *v.* LOCAL 308, INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, N. A. G. E.

KLAUS HIRNSCHAL ET AL. *v.* CITY OF HARTFORD

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued May 7—decision released August 17, 1976

*Peter G. Boucher,* assistant corporation counsel, with whom, on the brief, was *Richard W. Shettle,* corporation counsel, for the appellant (plaintiff in the first case and defendant in the second case).

*Ronald E. Cassidento,* for the appellees (defendant in the first case and plaintiffs in the second case).

LOISELLE, J. These cases were combined for purposes of appeal, pursuant to Practice Book § 606. In the first-named action, the plaintiff, city of Hart-

ford, has appealed from a judgment denying the application for an order vacating an arbitration award. In the second-named action, the defendant, city of Hartford, has appealed from a judgment confirming an arbitration award. The issues in the two actions will be discussed together.

The court found that the city of Hartford, referred to in this opinion as the city, entered into a collective bargaining agreement with Local 308, International Brotherhood of Police Officers, National Association of Government Employees, referred to in this opinion as the union, for the period from April 1, 1971, to March 31, 1973. Article II of the agreement provided for a grievance procedure consisting of four steps, with the final step calling for arbitration by the state board of mediation and arbitration, referred to in this opinion as the board, in accordance with its rules and procedures.[1]

On August 28, 1972, Klaus Hirnschal, an officer of the city's police department, was suspended from the department for alleged violation of rules found in the police manual. On December 6, 1972, after a hearing, the chief of police found Hirnschal guilty of the charges and dismissed him.

By letter dated October 3, 1973, the union, through its counsel, notified the city's director of

---

[1] Step 4 of the procedure set out in Article II of the agreement provided: "If the Union is not satisfied with the decision rendered in Step 3, it shall notify the Director of Personnel . . . after receipt of the decision that it intends to submit the grievance to arbitration; and shall simultaneously file notice of appeal with the State Board of Mediation and Arbitration, which shall act on such request in accordance with its rules and procedures. Said Board shall be limited to the express terms of the contract and shall not have the power to modify, amend or delete any terms or provisions of the agreement."

personnel that "[i]n accordance with the grievance procedure . . . in the contract between the City of Hartford and Local 308," the union was submitting the grievance of Hirnschal to the board for arbitration. At the same time, the union notified the board to the same effect. The parties agreed that the issue to be submitted to the board was as follows: "Under the contract between the parties to this grievance was Klaus Hirnschal discharged from police service for just cause? If not, what shall the remedy be?" After hearings, the board made its award on May 28, 1974, in which it said that Hirnschal was not discharged from police service for just cause and that he should be returned to his former position, but that he should not be entitled to any salary from the date he was dismissed until May 13, 1974, the effective date of his reinstatement.[2]

On May 29, 1974, the city applied for an order vacating the award.[3] On June 4, 1974, the union

[2] The award, which was entitled "In the matter of: City of Hartford and IBPO Local #308," reads, in part, as follows:

"Under the contract between the parties to this grievance, Klaus Hirnschal was not discharged from police service for just cause.

"Klaus Hirnschal must be returned to his former position in the Hartford Police Department effective Monday, May 13, 1974.

"The termination notice in his personnel folder shall be removed and a suspension notice substituted for a period from the date of his initial suspension-termination to May 13, 1974.

"Klaus Hirnschal shall not recover or be entitled to any salary or other benefits for the aforementioned period, date of suspension-termination to Monday, May 13, 1974."

[3] "[General Statutes] Sec. 52-418. VACATING AWARD. In any of the following cases the superior court for the county in which one of the parties resides or, in a controversy concerning land, for the county in which the land is situated or, when said court is not in session, any judge thereof, shall make an order vacating the award upon the application of any party to the arbitration: (a) If the award has been procured by corruption, fraud or undue means; (b) if there has been evident partiality or corruption on the part

and Hirnschal applied to the Superior Court for an order confirming the award.[4] See Practice Book § 446. After a consolidated hearing on those applications, the Superior Court rendered judgments in favor of the union and Hirnschal.

The city first claims that the trial court erroneously concluded that the arbitrators' award was binding on the parties. That conclusion was made in the event the binding effect of the award was an issue properly before the court, a condition the court concluded did not exist. The threshold question, then, is whether the trial court could properly rule upon the binding effect of the arbitrators' award.

The scope of judicial review of an arbitration award is limited by statute and by the agreement between the parties. *Costello Construction Corporation* v. *Teamsters Local 559,* 167 Conn. 315, 318, 355 A.2d 279. If the question has been entrusted

of the arbitrators or either of them; (c) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; (d) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators."

[4] "[General Statutes] Sec. 52-417. APPLICATION FOR ORDER CONFIRMING AWARD. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the county in which one of the parties resides or, in a controversy concerning land, for the county in which the land is situated or, when said court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such order unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

to the arbitration tribunal, then the court should not rule upon the merits of the issue and it should not usurp the function conferred upon that tribunal by the parties to the agreement. *Frager* v. *Pennsylvania General Ins. Co.*, 155 Conn. 270, 274, 231 A.2d 531; see *United Steelworkers of America* v. *American Mfg. Co.*, 363 U.S. 564, 569, 80 S. Ct. 1343, 4 L. Ed. 2d 1403. "Legal as well as factual disputes may be designated by the contract to be within the purview of the arbitrators . . . but arbitration and its scope remain dependent on the contract." *Gary Excavating, Inc.* v. *North Haven*, 164 Conn. 119, 121, 318 A.2d 84; see annot., 24 A.L.R.2d 752. The language of the agreement allocates the decision-making authority to the proper tribunal, the court or the arbitrator. Once the allocation is made, the parties may not vary it except by mutual consent. *A. Sangivanni & Sons* v. *F. M. Floryan & Co.*, 158 Conn. 467, 471, 262 A.2d 159.

The collective bargaining agreement between the city and the union at the time of the present controversy stated, in part, that "[a]ny grievance or dispute which may arise between the parties concerning the application, meaning or interpretation of this agreement, unless specifically excluded by this agreement, shall be settled in the following manner . . . ." The language of the collective bargaining agreement, similar in breadth to that found in *College Plaza, Inc.* v. *Harlaco, Inc.*, 152 Conn. 707, 206 A.2d 832, and in *A. Sangivanni & Sons* v. *F. M. Floryan & Co.*, supra, 472, allocates the resolution of the issue of whether the award was to be binding to the arbitrators themselves. "Specific designation of arbitrable matters is unnecessary where the language of the arbitration clause indicates an intention of the parties to include all con-

troversies which may arise under the principal agreement between them." *A. Sangivanni & Sons v. F. M. Floryan & Co.,* supra, 473. The court in the present case could not resolve the issue. Its conclusion that the award was binding was unnecessary.[5]

The city next contends that the court erroneously concluded that the arbitrators (1) had jurisdiction to entertain the submission, to conduct hearings and to render the award, (2) did not exceed their powers and (3) were not guilty of actions by which the rights of the city were prejudiced. The main factual contention in support of this part of the city's argument is that the grievant, Hirnschal, not the union, was the party that brought the grievance to the board. The city asserts that it never agreed to submit to arbitration of grievances prosecuted by individual employees, that the board is not statutorily empowered to arbitrate such grievances, that the board did arbitrate such a grievance here, and that in so doing the board was without jurisdiction, exceeded its powers and was guilty of actions by which the rights of the city were prejudiced.

The city contends that the agreement provides arbitration only if the union, not the individual employee, is dissatisfied with the decision rendered

---

[5] The city has assigned as error the trial court's refusal to find facts as set forth in the city's draft finding. Most of the draft finding concerns negotiations prior to the collective bargaining agreement and is intended to support the city's assertion that the arbitration award was not binding upon the parties to the agreement. We need not decide whether such facts should be added to the finding because we have decided that the binding effect of the arbitration award is not a proper issue for the court to decide. Other paragraphs in the draft finding either are already in the finding or do not affect the outcome of the appeal.

in the third step of the grievance procedure. The city further contends that because the agreement expressly says that individual employees may have their attorneys present at other steps in the procedure, this indicates that at the arbitration step, where the agreement is silent as to employees' attorneys, the individual employee is not allowed to have counsel.

The provisions of the grievance procedure invoked by the city to support its argument are a part of the agreement between the parties. See *Hudson Wire Co. v. Winsted Brass Workers Union,* 150 Conn. 546, 552, 191 A.2d 557. The dispute necessarily involves an application, or an interpretation, of the agreement. In this area, as well as in the area of the binding effect of the agreement discussed above, the agreement remains the focal point for determining whether the arbitrator is to apply, or interpret, the agreement. *Gary Excavating, Inc. v. North Haven,* 164 Conn. 119, 122, 318 A.2d 84; see *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555–59, 84 S. Ct. 909, 11 L. Ed. 2d 898; *In re Long Island Lumber Co.,* 15 N.Y.2d 380, 383–87, 207 N.E.2d 190. The broad language of the arbitration clause, as set out above, indicates that the parties desired the arbitration clause itself to be the subject to the arbitrators' decision. See *American Brake Shoe Co. v. Local No. 149,* 285 F.2d 869, 873 (4th Cir.). To the extent that the city's argument is based on the provisions of the grievance procedure, it is an area the court may not enter. To the extent, however, that the city's contentions are based on the statutory powers of the board, the court may look to the statute to discover whether the board may entertain such a proceeding.

Section 7-472 of the General Statutes states that the services of the board shall be available to municipal employers and employee organizations "for purposes of arbitration of disputes over the interpretation or application of the terms of a written agreement."[6] The city asserts that Hirnschal, not the employee organization, made use of the board's services and, therefore, the board exceeded its statutory power. In an unattacked conclusion, the trial court found that the union was a party to the arbitration proceedings. Also, the board, like other arbitrators, draws its powers from the arbitration provisions of the collective bargaining agreement. The legislature, however, has made the board's services available to municipal employers and employee organizations. Combining those aspects, the board must, in this case, look to the agreement to discover whether these two parties are the parties to the agreement. It is clear that the agreement in this case was made by the correct parties. It is also clear that it was an employee organization, the union, that notified the board of its intention to arbitrate an employee's grievance. Upon those facts, the board made its services available to the proper parties.

The city also asserts that the court erred in concluding that Hirnschal was a proper party to the application for confirmation of the award. In

---

[6] As used in the Municipal Employees Relations Act, General Statutes § 7-467, which applies to the parties on appeal, " '[m]unicipal employer' means any political subdivision of the state, including any . . . city . . . and any person or persons designated by the municipal employer to act in its interest in dealing with municipal employees; . . . 'employee organization' means any lawful association, labor organization, federation or council having as a primary purpose the improvement of wages, hours and other conditions of employment among employees of municipal employers."

response to the application for confirmation of the award, the city moved to erase it from the docket because the application was filed on behalf of Hirnschal and, as Hirnschal was not a legal party to the board's proceedings and is incapable of seeking affirmative relief under the provisions of General Statutes § 52-417, the court was without jurisdiction to hear the application. The motion was denied and the city has assigned the denial as error.

The application was made by both the union and Hirnschal. Section 52-417 only allows a "party to the arbitration" to seek confirmation of an award. In an unattacked finding the court found that the union was a "party to the arbitration" as the words are used in § 52-417. The union and Hirnschal concede that, if the union were not an applicant, then the application should have failed. The city asserts, however, that, because § 52-417 must be strictly construed, Hirnschal's joinder as a coapplicant destroyed the Superior Court's jurisdiction. Hirnschal was not a party to the agreement and the grievance procedure allows only the union to apply for arbitration proceedings. It follows that Hirnschal could not seek arbitration in his own right. Under General Statutes § 52-417, he is not a party to the arbitration and therefore is not entitled to apply to confirm the award. See *McCaffrey* v. *United Aircraft Corporation,* 147 Conn. 139, 142, 157 A.2d 920, cert. denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736.

The exclusive remedy for misjoinder of parties is a motion that the improper party be dropped. Practice Book § 157. The court was not in error in overruling the motion to erase. The record, finding and draft finding do not mention any other

motion made or denied. In the city's brief and appendix it does reveal that the court did state during the course of argument on this matter that "if you made a motion for permission to drop him as a party plaintiff, I am denying it for the reason that I have indicated, and you have an exception to that." In so ruling the court was in error. The city, however, in its brief, seems to indicate that such a motion is inappropriate and of no remedy, so that it appears that the city is not relying on such volunteered information given to it by the court.

The city has also assigned as error the court's overruling of the city's objection to the dual participation in the hearings of Hirnschal's counsel and the union's counsel, and the court's overruling of the city's objection to cross-examination of witnesses by Hirnschal's counsel. None of those rulings appears in the finding as required by Practice Book §§ 612B, 614, 619. See Practice Book Form 603. This court, therefore, will not consider those rulings. Practice Book § 652.

In the application to vacate, the city alleged that the actions of the arbitrators showed evident partiality. The city based its allegation on comments made by the chairman of the board of arbitrators during the arbitration proceedings. Those comments were made in connection with, first, the city's motion to quash subpoenas issued by Hirnschal's counsel and, second, an attempt by the city to offer into evidence a communication from the chief of police to the city's personnel director. In his comments concerning the subpoenas, the chairman stated, in substance, that if the city did not respond to subpoenas issued by Hirnschal's attor-

ney and the board, "then I automatically reinstate" Hirnschal. In his comments concerning the exhibit that the city offered, the chairman ruled that the exhibit could be marked only for identification and said: "We are going to start the hearing. If we don't start the hearing, I'll just dismiss the hearing because I am getting tired of you people coming in here — I am getting all this . . . that you are trying to put on the record so you both can take appeals and everything else."

What these comments show is not evident partiality but, in the one case, the chairman's view of what was likely to happen if the city refused to obey a subpoena issued by the board and, in the other case, the chairman's desire to proceed expeditiously with the hearing. Further, this court cannot conceive of any way in which the chairman's statement to the effect that the hearing would be dismissed showed partiality toward the union or Hirnschal, since the result of the dismissal would have been to leave in effect the step 3 decision that was adverse to them. The quoted comments of the chairman afford no basis for the court to find evident partiality.

"It is the established policy of the courts to regard awards with liberality. Every reasonable presumption and intendment will be made in favor of the award and of the arbitrators' acts and proceedings. Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it." *Von Langendorff* v. *Riordan,* 147 Conn. 524, 527, 163 A.2d 100; see annot., 56 A.L.R.3d 697. The city has not met that burden and the trial court did not err in concluding as it did.

The final assertion by the city is that the court erroneously concluded that the arbitrators did not so imperfectly execute their powers that a mutual, final and definite award upon the subject matter submitted was not made. The issue submitted to the board was whether Hirnschal was discharged from police service for just cause and "[i]f not, what shall the remedy be?" In addition to finding that Hirnschal was not discharged for just cause, the board held in its award that Hirnschal would not be entitled to any salary or benefit from his suspension to the date of his return to his former position as ordered by the board. The city contends that the finding by the board that Hirnschal was not discharged for just cause is inherently inconsistent with its failure to award him back pay.

"[I]n deciding whether arbitrators have 'exceeded their powers,' as that phrase is used in § 52-418 (d), courts need only examine the submission and the award to determine whether the award conforms to the submission." *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.,* 164 Conn. 472, 477, 325 A.2d 274; see note, "Judicial Interpretations and Applications of the Connecticut Arbitration Statutes," 7 Conn. L. Rev. 147, 172–77. If the board was to have determined only whether Hirnschal's discharge was for just cause, then there would have been no reason to ask what the "remedy" should be if Hirnschal was not discharged for just cause. It is evident that the submission contemplated that if the board did not arrive at a decision that Hirnschal was discharged for just cause, it could also determine something less than reinstatement with back pay as the "remedy." The award implies that the board felt there was a basis

in the rules and regulations of the police department for suspending Hirnschal without pay, but no basis for discharging him. The award was clearly within the terms of the submission. The city did not meet its burden of proving otherwise. *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.,* supra, 478.

There is no error.

In this opinion the other judges concurred.