DONALD L. FRANCO *v.* EAST SHORE
DEVELOPMENT, INC.
(AC 21958)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued June 10—officially released October 29, 2002

*Louis R. Pepe*, with whom was *Jennifer A. Oso-wiecki*, for the appellant (Laurel Woods, Inc.).

*Kenneth A. Votre*, for the appellee (plaintiff).

Opinion

SCHALLER, J. The appellant, Laurel Woods, Inc. (Laurel Woods), appeals from the trial court's decision denying its motion to join in the proceedings as a party. We affirm the judgment of the trial court.

The following facts are necessary for our resolution of the appeal. On September 24, 1992, the plaintiff, Donald L. Franco, and the defendant, East Shore Development, Inc. (East Shore), entered into a contract (agreement). According to the terms of the agreement, Franco was to manage a nursing facility that East Shore was going to build, own and operate. East Shore completed the facility and leased it to Laurel Woods. Thereafter, Franco managed the facility from 1993 to 1998.

During the late spring and early summer of 1998, a dispute arose between Franco and East Shore concerning Franco's compliance with his obligations under the agreement. On or about June 1, 1998, Franco filed a demand for arbitration, pursuant to the arbitration clause of the agreement, claiming that East Shore had breached the agreement by actually terminating, attempting to terminate or threatening to terminate the agreement. By way of letter on July 23, 1998, East Shore formally terminated the agreement with Franco alleging that Franco violated the agreement because he had failed to pay a payroll withholding tax.

On September 8, 2000, while the arbitration proceedings were pending, East Shore assigned all its right, title and interest in any arbitration award to Laurel Woods. East Shore also filed a counterclaim on or about November 12, 1998, alleging that Franco had breached the agreement. The arbitrator issued a decision on February 9, 2001, that denied Franco relief and awarded East Shore damages totaling $432,794.

On March 8, 2001, Franco filed an application to vacate the arbitration award. On March 29, 2001, East Shore and Laurel Woods filed a motion for joinder and to confirm the arbitration award. The motion was comprised of two components. Laurel Woods, as the assignee of East Shore, sought pursuant to General Statutes §§ 52-101 and 52-103 to be joined as a party in interest to the proceedings. Further, East Shore and Laurel Woods sought an order pursuant to General Statutes §§ 52-417 and 52-420 confirming the arbitration award. Franco filed an objection to the motion for joinder on May 2, 2001.

On May 11, 2001, the court denied Laurel Woods' motion for joinder. The court stated that "Laurel Woods had no written contract with the plaintiff . . . for arbitration. Laurel Woods was not [the] assignee of the actual contract between the plaintiff and East Shore, but merely the assignee of any award proceeds from the arbitration. General Statutes §§ 52-417 and 52-418 provide that only a party to the arbitration may be a party to the court actions seeking to confirm or vacate the award. See *Hartford* v. *Local 308*, 171 Conn. 420, 370 A.2d 996 (1976). The fact that the award may result in a benefit or a detriment to another person or entity is immaterial to party status. Id." The court also entered an order staying the proceeding to confirm or to vacate the arbitration award pending an appellate decision on the denial of Laurel Wood's motion for joinder. This appeal followed.

On appeal, Laurel Woods claims that the court improperly denied its motion for joinder. In support of that claim, Laurel Woods asserts several arguments based on our General Statutes, rules of practice and case law.[1] At the forefront, we note the standard of review that governs the issue. "The denial of a motion to intervene as of right raises a question of law and warrants plenary review, whereas a denial for permissive intervention is reviewed with an abuse of discretion standard."[2] *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 142, 758 A.2d 916 (2000).

Before we address Laurel Woods' claim, however, we must first take note of the context surrounding the present appeal. Specifically, although Laurel Woods has appealed only from the court's denial of its motion to join as a party, the original motion was both a motion to join and to confirm the award. In view of that combi-

---

[1] Specifically, Laurel Woods argues that General Statutes §§ 52-101, 52-102, 52-107 and 52-118 support the conclusion that it should be made a party on the basis of its status as an assignee. Laurel Woods also argues that as an assignee, it was entitled to become a party in accordance with Practice Book §§ 9-15, 9-16 and 9-23. Laurel Woods further argues that it was improper for the court to deny it party status on the basis of case law. In light of our ruling, we need not address any of those arguments specifically.

[2] Laurel Woods' brief, when read in conjunction with its reply brief, addresses both intervention as of right and permissive intervention. We note, however, that the court's memorandum of decision does not specify whether its ruling is based on intervention as of right or permissive intervention. Rather, the court relied on the statute pertaining to the confirmation of arbitration awards, General Statutes § 52-417, as the basis for its ruling. Although that is somewhat unusual, as we will explain, the court was correct in taking that approach because Laurel Woods' motion to intervene must be considered in the context of its motion to intervene *and* to confirm the award. We conclude, therefore, that the court's reliance on § 52-417 to deny Laurel Woods' motion to intervene, in this specific procedural situation, is the functional equivalent of the court's determining that Laurel Woods did not have a right to intervene. We further conclude, in light of that result, that the court implicitly declined to allow Laurel Woods to intervene as a permissive matter because it did not address that option, having declined to grant intervention as of right. We therefore apply both standards and conclude that the court's decision was correct under both standards.

nation, it is evident that Laurel Woods' ultimate goal was to join the case as a party and then to argue the motion to confirm the award in the hope of protecting the award it had been assigned. In light of that goal, we focus on Laurel Woods' ability to participate in the confirmation proceedings in deciding whether the court properly denied the motion for joinder because if Laurel Woods could not properly participate in those proceedings, then granting the motion for joinder for the purpose of arguing the motion to confirm would be improper.[3]

We therefore review the law applicable to confirming arbitration awards to determine whether the court correctly denied the motion for joinder. We begin with the words of the applicable statute, § 52-417, which provides in relevant part that "[a]t any time within one year after an award has been rendered and the parties to the arbitration notified thereof, *any party to the arbitration* may make application to the superior court . . . for an order confirming the award . . . ." (Emphasis added.) That language indicates that under § 52-417, one can seek to confirm an award only if one is a party to the arbitration. *Hartford* v. *Local 308*, supra, 171 Conn. 429.

The question becomes: Who qualifies as a "party" under § 52-417? While this question has not been addressed squarely in the context of the present case, case law in the collective bargaining context provides useful guidance in defining this statutory language.[4] In

---

[3] Because we focus our analysis on Laurel Woods' ability to participate in the confirmation proceedings, we need not apply the legal tests underlying the standards of review for intervention as of right; see *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 138–40; or permissive intervention; see *Tax Collector* v. *Miley*, 34 Conn. App. 634, 639–40, 642 A.2d 747 (1994).

[4] Laurel Woods argues in its reply brief that we should not rely on cases that occur in the collective bargaining context because the relationship between an employee and a union is different from the present case where there is an assignment and because our Supreme Court, in *Paranko* v. *State*,

*Taylor* v. *State Board of Mediation & Arbitration*, 54 Conn. App. 550, 557, 736 A.2d 175 (1999), cert. denied, 252 Conn. 925, 747 A.2d 1 (2000), we stated that "[u]nless a collective bargaining agreement provides for a personal right to seek arbitration . . . an employee subject to the agreement is not a 'party to the arbitration' under General Statutes § 52-417 and thus has no standing to apply to confirm an award." (Citation omitted; internal quotation marks omitted.) *Taylor* makes it clear that to qualify as a "party" under § 52-417, one must have the individual right to seek arbitration. Accordingly, we conclude that in the present context, a "party" for the purposes of § 52-417 must have the personal right to seek arbitration.

With that conclusion in mind, we next set out to determine who has a personal right to compel arbitration and begin by noting that General Statutes § 52-410 governs the right to compel arbitration.[5] Section 52-410 provides in relevant part that "[a] *party to a written*

200 Conn. 51, 509 A.2d 508 (1986), stated that there is "no factual parallel to these [collective bargaining] arrangements . . . ." (Internal quotation marks omitted.) Id., 55. We are not persuaded by that argument. First, the *Paranko* court stated only that it is a mistake to try to fit *collective bargaining agreements* into other legal contexts. Id. That is not what we do here. We do not attempt to force collective bargaining agreements into any other legal arena, but rather analogize from such agreements to the situation in the present case. The *Paranko* court made no prohibition against applying the outcome of its collective bargaining agreement decision to other, later cases that arise in other contexts. Furthermore, although the facts differ in the present case, that is not a persuasive reason not to apply case law that has developed a definition for statutory language that is at issue in the present case. Indeed, to define language from a single statute differently depending on the facts of each case would lead to an infinite number of definitions for the same language. Such a result is undesirable.

[5] We note that General Statutes §§ 52-408 and 52-410 apply to one's ability to seek arbitration. Section 52-408, however, provides, in essence, only that a written agreement to arbitrate is enforceable. It is § 52-410 that allows one to seek enforcement of an arbitration provision. We therefore refer to only § 52-410 from this point forward, with the implicit understanding that this section relies on § 52-408.

*agreement for arbitration* claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement . . . ." (Emphasis added.)

At this point, we must determine the meaning of "party" under § 52-410.[6] Although that may appear to be duplicative, it is, in fact, a separate question on which our Supreme Court has spoken. In *Paranko* v. *State*, 200 Conn. 51, 52–53, 509 A.2d 508 (1986), the issue the court addressed was whether an individual union member could compel arbitration, pursuant to § 52-410, under the terms of a collective bargaining agreement between the state and the individual's employee union. The court stated that "[t]he clear purpose of § 52-410 is to provide the 'parties' to an arbitration agreement with an enforcement mechanism by permitting them to invoke the court's equitable powers. The statute limits the availability of the remedy to 'parties,' but the word is not defined. The term is used generically, referring to anyone who has contracted with another to arbitrate their disputes. The meaning must therefore be derived from the agreement itself." Id., 54; see also *McCaffrey* v. *United Aircraft Corp.*, 147 Conn. 139, 141–42, 157 A.2d 920 ("[B]asis for arbitration in a particular case is to be found in the written agreement between the parties. Action in the courts to compel compliance with the arbitration provisions of the agreement can be taken only by the parties as determined in the agreement. General Statutes §§ 52-408, 52-410."), cert. denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736 (1960).

In determining who the "parties" to the agreement were in *Paranko*, our Supreme Court stated that "indi-

[6] We note that on the basis of footnote 5, the definition of "party" for the purposes of General Statutes § 52-410 implicitly also applies to the term "parties to any written contract" in General Statutes § 52-408.

vidual employees may be 'parties' to a collective bargaining agreement for the purposes of General Statutes § 52-410 if the collective bargaining *agreement so provides.* . . . Thus, if the collective bargaining agreement contains no provision giving employees the right to submit disputes to arbitration, then an employee could not seek relief under the statute. . . . *If the agreement explicitly grants employees the right to seek arbitration,* however, the employee would be able to petition the court to enforce that right under General Statutes § 52-410." (Citations omitted; emphasis added.) *Paranko* v. *State,* supra, 200 Conn. 55–56.

Guided by the court's language in *Paranko,* we conclude that to determine the meaning of the term "party" for purposes of § 52-410, we must look to the language of the agreement for an express statement granting the right to seek arbitration to the person or entity seeking to compel the arbitration. Thus, for purposes of § 52-410, we define a "party" who can compel arbitration as one who is identified in the written agreement and is granted the express authority to force another party to the agreement to arbitrate. We further conclude that a "party" under § 52-417 shares the same definition because our case law states that to qualify as a "party" for the purposes of seeking confirmation under § 52-417, one must have the individual right to compel arbitration.

That is a sensible conclusion because if the definition of a "party" under § 52-417 were to demand anything less, then it would be conceivable that a person who had no right to force another to arbitrate in the first place could later bring an application to confirm an arbitration award where he or she in no way had participated in the arbitration. Such a result would be illogical. It also would be patently unfair in light of the underlying agreement because the person who would have to defend against the application to confirm would be

forced into an adversarial relationship with someone with whom he or she had not entered into the arbitration agreement.

Having determined the definition of a "party" under § 52-417, we now address Laurel Woods' present claim. We conclude that the court's decision denying the motion for joinder was correct because Laurel Woods was not a "party," as defined by § 52-417, and therefore did not have the right to seek to confirm the arbitration award. In reaching that conclusion, we look to the language of the written agreement, as directed by our Supreme Court. First, it is undisputed that the agreement in the present case was entered into only by East Shore and Franco. In addition, Laurel Woods was not mentioned in the agreement in any capacity. Furthermore, Laurel Woods did not become involved in the case in any way until September 8, 2000, which was more than two years after Franco's demand for arbitration.

Under those circumstances, we cannot conclude that Laurel Woods was a "party" for the purposes of § 52-417, as we have defined that term. It is uncontested that Laurel Woods was not identified in any way in the agreement between East Shore and Franco. That is the first requirement under the previously stated definition. Furthermore, it is evident that the agreement is void of any express statement granting to Laurel Woods the right to seek arbitration. That is the second requirement for "party" status. Because Laurel Woods was not mentioned in the agreement and did not hold an explicit personal right to seek arbitration, it was not a "party" under § 52-417 and, therefore, had no standing to apply to confirm the award.[7] In light of that conclusion, the

---

[7] Although the dissent seeks to address the motion for joinder separately from the motion to confirm, we do not agree that this is appropriate in this case. As stated previously, if Laurel Woods could not properly participate in the confirmation proceeding, then allowing it to join the matter solely for that purpose would be improper. In essence, that would allow Laurel

court correctly denied the motion to intervene because Laurel Woods could not properly participate in the motion to confirm the award.[8]

Woods to circumvent the arbitration law we have recited and to participate in a confirmation proceeding to which it is not a proper party. Such a result would be incorrect as a matter of law. Furthermore, allowing Laurel Woods to join the confirmation proceeding causes other problems. If Laurel Woods were allowed to participate in the confirmation proceeding, it could seek to bind Franco to an arbitration in which Laurel Woods had in no way participated. If Laurel Woods were allowed to participate, it would be unfair to Franco in light of the underlying agreement because Franco would then have to defend against the motion to confirm and would be forced into an adversarial relationship with Laurel Woods, a party with which he had not entered into the arbitration agreement and which has no rights under that agreement. Given that potential outcome and the governing law, it is not appropriate to separate the motion for joinder from the motion to confirm in this case.

[8] Although that conclusion rests on the applicable case law previously discussed, Laurel Woods argues that *International Brotherhood of Police Officers, Local 564* v. *Jewett City*, 234 Conn. 123, 661 A.2d 573 (1995), *Milford* v. *Local 1566*, 200 Conn. 91, 510 A.2d 177 (1986), *Gaudet* v. *Safeco Ins. Co.*, 219 Conn. 391, 593 A.2d 1362 (1991), and *KND Corp.* v. *Hartcom, Inc.*, 5 Conn. App. 333, 497 A.2d 1038 (1985), control the present case. We do not agree and find those cases distinguishable.

*Jewett City* is inapplicable because that case simply does not address the issue at hand. Although *Jewett City* does mention that the defendant municipality's receiver was allowed to intervene in the arbitration proceedings; *International Brotherhood of Police Officers, Local 564* v. *Jewett City*, supra, 234 Conn. 130; there is no analysis beyond that statement of fact. Similarly, *Milford* does not support Laurel Woods' position because that case did not involve a contract or assignment. Rather, the state board of mediation and arbitration itself sought to intervene to defend its procedures after a party to an arbitration applied to vacate the decision because the arbitrators did not follow proper procedure. *Milford* v. *Local 1566*, supra, 200 Conn. 92. *Gaudet* also is distinguishable. That case examined the ability of an injured passenger to force arbitration of an uninsured motorist insurance claim relative to a specific insurance coverage statute. *Gaudet* v. *Safeco Ins. Co.*, supra, 219 Conn. 392–94. The *Gaudet* court therefore was forced to consider legislative intent in analyzing the term "party" because a "legislatively dictated" term existed in the parties' contract. Id., 397. We do not face such restrictions in the present case. Last, *Hartcom, Inc.*, also is inapplicable. That case concerned a defendant assignee that had been assigned the contract rights from an assignor. *KND Corp.* v. *Hartcom, Inc.*, supra, 5 Conn. App. 334. When the plaintiff brought an action against the assignee, the assignee sought a stay of the proceedings in court pursuant to General

Although we are bound to reach the present decision on the basis of controlling arbitration statutes and law, we are not unmindful of the harsh result our decision has on Laurel Woods as assignee in the present situation. We therefore now address Laurel Woods' contention, restated generally, that it had a right to join the proceedings because it was an assignee of the arbitration award. We begin by emphasizing that the present decision is made in the arbitration context and relies on arbitration statutes and arbitration case law. Those statutes and law govern Laurel Woods' appeal because the underlying action was an arbitration proceeding.[9] Therefore, Laurel Woods, despite its status as an assignee, had the burden of establishing itself as a "party" in this context.

The specific nature and timing of the assignment in this case, however, does not persuade us that Laurel Woods, in its role as assignee, satisfied the definition of a "party" for purposes of § 52-417. As previously stated, Laurel Woods was not mentioned specifically in parties' agreement. Further, Laurel Woods was assigned its limited interest in the arbitration award on September 8, 2000, which was just more than two years after Franco's demand for arbitration. Additionally, even if we assume that the agreement's assignment provision identified Laurel Woods, if not by name then by status, as is required by the definition of "party," Laurel Woods cannot establish that the agreement provided it with

Statutes § 52-409. Therefore, *Hartcom, Inc.*, involves a different assignment, a different statute and a different procedural posture than does the present case.

[9] Despite the fact that the present case arises from an arbitration proceeding, the dissent does not cite to any law or authority applicable to the arbitration context, but rather relies only on general principles of intervention. Although that presumably is based on its view that the motion for joinder and the motion to confirm should be treated separately; see footnote 7; we do not find those general principles applicable in light of the arbitration context of this case and the governing arbitration law.

an explicit right to arbitrate because the assignment referred to the *arbitration award* only. East Shore did not assign to Laurel Woods the entire contract or any of its rights or obligations specifically relating to the arbitration provision.[10]

We also note, however, that Laurel Woods, as an assignee, still may pursue the arbitration award in a common-law contract action. See *Spearhead Construction Corp.* v. *Bianco*, 39 Conn. App. 122, 130, 132, 665 A.2d 86 (procedures in §§ 52-417 to 52-419 "are not the exclusive means for judicial enforcement of an arbitration award" and "[i]n the absence of a motion to confirm the award, the parties would be left to their common law remedies"), cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). Although exercising that remedy would result in additional litigation, we have stated that "[e]ven though it is the policy of the law to favor settlement of disputes by arbitration . . . arbitration agreements are to be strictly construed and such agreements should not be extended by implication." (Citation omitted.) *Wesleyan University* v. *Rissil Construction Associates, Inc.*, 1 Conn. App. 351, 354–55, 472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). Therefore, for Laurel Woods, as an assignee, to avoid the obstacle of establishing itself as a "party," as that term is used in the arbitration context, and to assert all the rights to the subject assigned, as it is entitled to do under the common law; see *Mall* v. *LaBow*, 33 Conn. App. 359, 362, 635 A.2d 871, cert. denied, 229 Conn. 912,

---

[10] We note that with regard to the arbitration context, we do not go so far as to state that the statutory term "party," as used in either General Statutes §§ 52-410 or 52-417 may never include assignees. Rather, we conclude only that when a person or entity is not mentioned in any capacity in an agreement at the time when it is made, is later assigned an interest after arbitration proceedings have been commenced and is assigned an interest in the arbitration *award* only, that person or entity cannot apply to confirm the arbitration award pursuant to § 52-417 because the person or entity does not meet the definition of "party" under § 52-417.

642 A.2d 1208 (1993); it may have to file an action that avoids the arbitration statutes. We, however, are bound to apply those statutes in the present appeal.[11] Because we conclude that Laurel Woods was not a "party" under § 52-417, we further conclude that the court correctly denied the motion to join because Laurel Woods could not properly participate in the motion to confirm the award.

The judgment is affirmed.

In this opinion HENNESSY, J., concurred.

LAVERY, C. J., dissenting. I disagree with the conclusion reached by the majority because I believe that there is no basis in law for the assumption on which the opinion impliedly is premised, that is, for an individual or entity to intervene in an action, it must have the standing necessary to have brought the original action itself. By considering the motion to intervene filed by the appellant, Laurel Woods, Inc. (Laurel Woods), as inseparable from its motion to confirm the arbitration award at issue, the majority obscures the issue before us.

I agree with the majority's determination that Laurel Woods, as a nonparty to the management agreement between the plaintiff, Donald L. Franco, and the defendant, East Shore Development, Inc. (East Shore), which agreement contains an arbitration clause, could not apply to the court pursuant to General Statutes § 52-417 for an order confirming the arbitrator's award. See *Hartford* v. *Local 308*, 171 Conn. 420, 429, 370 A.2d 996 (1976). I differ, however, as to the relevance of that

---

[11] The dissent notes that intervention should be allowed because there is a possibility that the award will be vacated and that if this occurs, the ultimate result would be unjust to Laurel Woods. Although such a result may occur, we are bound to apply the law as it stands, regardless of the equities that may or may not exist in light of other aspects of the present case, over which we have no control or jurisdiction.

determination to the disposition of Laurel Woods' motion to intervene.[1]

To support intervention, a prospective intervenor must show that it has some legally protected interest in the subject matter of the litigation. 59 Am. Jur. 2d 594–95, Parties § 176 (2002).[2] "A proposed intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene. The inquiry is whether the claims contained in the motion, if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment." *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 747, 699 A.2d 73 (1997).

Nonetheless, there is no requirement that a prospective intervenor, in its motion to intervene, assert the *same* claim as the plaintiff in the original action. As we stated in *State Board of Education* v. *Waterbury*, 21 Conn. App. 67, 571 A.2d 148 (1990), "[s]uch a restriction on intervention finds no support . . . in common sense. The whole point of intervention is to allow the participation of persons with interests distinct from

---

[1] Although Laurel Woods captioned its motion as one for joinder, its substance is that of a motion to intervene. "[I]ntervention is a proceeding by which a person, not originally a party to an action, is permitted to and does become a party to the pending proceeding for the protection of some right or interest alleged by him to be affected by the proceeding . . . . 'Joinder' is a method by which one may be compelled to become a party, whereas 'intervention' is a method by which an outsider with an interest in a lawsuit may come in as a party on his or her application." 59 Am. Jur. 2d 579, Parties § 161 (2002). Where a party captions its motion improperly, "we look to the substance of the claim rather than the form." (Internal quotation marks omitted.) *Dyck O'Neal, Inc.* v. *Wynne*, 56 Conn. App. 161, 164, 742 A.2d 393 (1999); see *In re Brianna F.*, 50 Conn. App. 805, 812, 719 A.2d 478 (1998).

[2] General Statutes § 52-107, the statute governing intervention, provides in relevant part that "[i]f a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

those of the original parties; it is therefore to be expected that an intervenor's standing will have a somewhat different basis from that of the original plaintiffs." (Internal quotation marks omitted.) Id., 75.

"To hold otherwise would be to conclude that an intervenor must allege the exact issues as those alleged by the original plaintiffs, and would, therefore, be in direct opposition to and in contradiction with the requirement that in order for intervention to be warranted, the prospective plaintiffs must show that their rights are not adequately represented by the present parties. Once a party has been granted intervention as of right, the scope of issues raised in a proposed complaint is logically within the authority and discretion of the trial court." Id., 75–76; see also *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 151–52, 758 A.2d 916 (2000) (holding that seven priests should have been allowed to intervene in action for damages for alleged sexual abuse by particular priest for purpose of filing motion to quash and for protective order and otherwise to prevent disclosure of private, confidential information from their respective personnel files). Therefore, the fact that Laurel Woods could not join East Shore in the motion to confirm the arbitration award should not have been fatal to Laurel Woods' attempt to intervene in the confirmation proceedings.

In its motion to intervene, Laurel Woods averred that "[o]n September 8, 2000, while the arbitration proceedings were pending, East Shore Development, Inc., assigned all of its right, title and interest in any arbitration award it might receive to Laurel Woods" and appended documentation evidencing that assignment. Laurel Woods thus asserted, by virtue of the assignment, a legally protected interest in the subject matter of the litigation, the arbitration award, that was sufficient to support its motion to intervene in the confirmation pro-

ceedings. If the court found the other conditions for intervention[3] satisfied, it ought to have granted the motion.

Despite the majority's assurances that an alternate remedy is available, I believe that it is important that Laurel Woods be allowed to intervene in the present action[4] to pursue its claim to the arbitration award because a potential outcome of the proceedings is vacation of that award. The plaintiff has filed an application to vacate pursuant to General Statutes § 52-418 and, while the parties were awaiting the court's decision on the motions to intervene and to confirm the arbitration award, the plaintiff exercised an option to become an 80 percent shareholder of the defendant. Thus, the defendant's ability to pursue its motion to confirm (and to contest the application to vacate) has been compromised. Furthermore, if the plaintiff is successful on the application to vacate, no award will remain for which Laurel Woods may seek confirmation in a separate common-law action, as suggested by the majority. Laurel Woods, as a nonparty to the agreement containing the arbitration clause, will have no right to compel arbitration anew. Under the circumstances, I believe that denying Laurel Woods the right to intervene is not only improper, but unjust.

I would reverse the judgment.

---

[3] There are "four requirements that an intervenor must show to obtain intervention as of right. The motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 140.

[4] The majority does not explain why Laurel Woods necessarily must pursue common-law enforcement of the arbitration award in a separate action instead of amending its motion to intervene to allege that right.